UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES TALFORD, JR.

                Plaintiff,

v.

NEW YORK STATE, DIVISION OF STATE
POLICE,

                Defendant.

**DECISION AND ORDER**
11-CV-454S

## I. INTRODUCTION

Plaintiff, James Talford Jr., is a former trooper and investigator for Defendant, New York State Police. According to Talford, he "involuntarily retired" on September 30, 2009. His purported forced retirement arose as result of his arrest on July 29, 2009 for alleged criminal conduct. In connection with that arrest, Talford's "mugshot" was published on the State Police's website and released to the media. Talford, who is black, brings this action alleging that the act of posting his mugshot violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and New York State Human Rights Law. He contends that the mugshots of Caucasian employees who were arrested were not posted, and that his – and that of another black New York State Trooper, Lester Hooper – was posted because he is black.

Currently before this Court is Defendant's motion for summary judgment. For the following reasons, that motion is granted.

## II. BACKGROUND

**A.     Facts[1]**

Talford, who for a time until roughly 2006 worked in an undercover capacity, was employed by the New York State Police from 1988 until his retirement on September 30, 2009. (Def.'s Stmnt., ¶ 1; Docket No. 23.) His retirement was precipitated by his arrest and subsequent guilty plea to three "violations."[2] According to Defendant, "Plaintiff's arrest resulted from a number of disturbing incidents which occurred between 2005 and 2009 involving his former girlfriend, Carla Johnson, and her friend and housemate, Elizabeth Szemerits." (Id., ¶ 6.) There is no dispute that from 2000–2006 Talford and Johnson were engaged in a romantic relationship. But many, if not all, the incidents that Defendants attribute to Talford are disputed.

For example, according to a New York State Police investigation, among other allegations, Talford (1) stole "thousands of dollars" from the two women after unlawfully entering their home, (2) threw rocks through a window at their home, (3) drove a vehicle over their lawn, (4) vandalized the women's cars, and (5) made harassing phone calls using a "spoofcard," which conceals or alters the caller's identity. (Id., ¶¶ 9–12.)

Talford denies each of these allegations. But there is no dispute that Talford eventually pleaded guilty to violations in connection with his arrest. (Id., ¶¶ 3–4; Pl.'s

---

[1]This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s Stmnt." and "Def.'s Stmnt." respectively) to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

[2]New York State Penal Law defines a violation as an "offense other than a 'traffic infraction,' for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed." See N.Y. Penal Law § 10.00. The specific violations to which Talford pleaded guilty were not identified in the memorandums of law or the statements of facts. But Plaintiff admits that he pleaded guilty to an "alleged pattern of harassing and fraudulent conduct." (Pl.'s Stmnt., ¶ 6.)

Stmnt., ¶ 6; Docket No. 27.) Further, there is no dispute that, as a result of the arrest, Talford was demoted from investigator to trooper, and that he later retired from the New York State Police after entering the guilty plea. (Def.'s Stmnt., ¶¶ 3–4.)

There is also no dispute that Defendant published Talford's mugshot on its website after making the arrest, and that some white former employees who were arrested did not have their mugshot so published.[3]

### III. DISCUSSION

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation

---

[3]Though it should be noted that Defendant vigorously objects to the suggestion that there was any pattern in publishing the mugshots of black, but not white, employees; it points out that images of several white employees – if not all – were in fact published.

omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.      Talford's discrimination claim**

Talford alleges that the publication of his mugshot on the New State Police's website violated his rights under Title VII and New York State Human Rights Law. Courts in this Circuit analyze discrimination claims brought under Title VII and the New York State Human Rights Law in the same manner. Therefore, this Court's consideration of Talford's federal discrimination claims applies equally to his state action. See Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003). Title VII claims are analyzed under the Supreme Court's familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Patterson, 375 F.3d at 225–27. Under that framework, a plaintiff must first establish a *prima facie* case by adducing sufficient evidence to permit a rational trier of fact to find that he: (1) is a member of a protected class; (2) was qualified for his position and performing his duties satisfactorily; (3) was subject to an adverse employment action (4)

suffered under "circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). The Second Circuit has explained that an action must cause a "materially adverse change in the terms and conditions of employment," and not just "mere inconvenience," in order to qualify as "adverse." Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005) (internal quotation marks and citations omitted).

If the plaintiff succeeds in establishing his *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its challenged action. McDonnell Douglas Corp., 411 U.S. at 802; Terry, 336 F.3d at 138. If the employer does so, the McDonnell Douglas presumptions disappear, and, in a race-discrimination case, the plaintiff must then set forth sufficient evidence to support a reasonable inference that discrimination occurred. See James v. New York Racing Ass'n., 233 F.3d 149, 156 (2d Cir. 2000).

This Court, however, need not engage in the burden-shifting analysis because Talford has failed to present a *prima facie* case. While there is no question that he is a member of a protected class, Talford fails to demonstrate that he suffered an adverse employment action as a result of his race.

Talford must connect the allegedly discriminatory act to an adverse employment action. 42 U.S.C. § 2000e–2(a)(1) (making it unlawful to "fail or refuse to hire or to discharge any individual . . . with respect to his compensation, terms, conditions or privileges of employment, *because of* such individual's race, color, religion, sex or national origin") (emphasis added). Despite this requirement, Talford hardly endeavors to make such a causal connection. He does not for example, allege that he was unfairly

5

investigated because of his race, or that he was forced to retire or take a demotion because of his race. He simply argues that his mugshot was posted because of his race. Indeed, there is no confusion about this. In his opposition to summary judgment, Talford states, "Both causes of action are base [sic] on the fact that only Black African Americans (Plaintiff and Lester Hooper) had their mug shots released." (Pl.'s Br. at 2; Docket No. 28.) But Talford fails to argue that the act of publishing the mugshot, in itself, is somehow an adverse employment action. And in the absence of any argument from Talford on this issue, this Court will not find the publication itself caused a "materially adverse change in the terms and conditions of employment." Fairbrother, 412 F.3d at 56. If anything, the evidence is clear that it was his arrest and subsequent guilty plea – not the mugshot – that caused such a change.

Although Talford's involuntary retirement may be considered an adverse action, his only attempt to connect that action to any alleged racial discrimination is found in one sentence in his memorandum of law, where he writes, "If the Defendant had not released [the] mugshot, the Plaintiff would not have plead [sic] to the violations, nor retired from the Defendant." (Pl.'s Br., at 7.) This dubious proposition is supported by no further argument, case law, or elaboration of any kind. Talford does not explain why it was the publication of his image, and not the strength of the evidence against him, that compelled him to plead guilty; nor does he explain why it was the publication of his image, and not the arrest, guilty plea, and resultant loss of esteem within the Division of State Police, that caused him to retire. In fact, he later explains that he retired not because of the mugshot or the consequences of its publication, but because he faced termination and believed that "appealing the termination could not have been done in a fair and equitable manner" due

6

to an imbalance in the number of union- and administration-representatives on the appellate body. (Id., at 23.) Talford's conclusory, flimsy, and contradictory attempt to bring the facts of the case within the purview of Title VII simply cannot stand up under the summary judgment standard.

Finally, although Talford does point to some unfortunate consequences of the mugshot publication – a death threat, for example, was lodged against him presumably because the mugshot revealed his identity as an undercover agent – those consequences do not give rise to a Title VII claim because, while certainly adverse, the consequences were not adverse *employment actions*. Given his former status as an undercover agent, it may have been unwise for Defendant to release his picture, but, on the facts presented here, it was not a violation of Title VII or New York State Human Rights Law.

## IV. CONCLUSION

Talford has failed to connect the alleged racially discriminatory behavior – publication of his mugshot – to any adverse employment action. Because Title VII and New York State Human Rights Law require such a connection, Defendant's motion for summary judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 21) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

Dated: July 8, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court